UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| EDWIN SOTO ) | CASE NO.  1:13CV656 |
| ) | |
| Plaintiff ) | MAGISTRATE JUDGE |
| ) | GEORGE J. LIMBERT |
| v. ) | |
| ) | **MEMORANDUM AND OPINION** |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION ) | |
| ) | |
| ) | |
| Defendant ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Edwin Soto Supplemental Security Income (SSI).  The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in his September 15, 2011 decision in finding that Plaintiff was not disabled because he could perform a range of light work despite his impairments (Tr. 19-34).  The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

## I.   PROCEDURAL HISTORY

It should be noted that Plaintiff filed multiple prior SSI applications, including one that was granted despite substance addiction before Congress amended the Social Security Act to prohibit disability claims in which a claimant's substance abuse was material (Tr. 304).  Payment on that claim was interrupted by Plaintiff's subsequent incarceration (Tr. 304).  Plaintiff's most recent prior SSI application was adjudicated unfavorably by an ALJ on March 4, 2009 (Tr. 22).  Plaintiff then filed

1

his current SSI application on November 10, 2009 (Tr. 107), alleging he became disabled on October 31, 2007, but amended his onset date at the hearing to November 10, 2009 (Tr. 43, 107). Plaintiff's application was denied initially and on reconsideration (Tr. 76, 86). Plaintiff requested a hearing before an ALJ, and, on August 18, 2011, a hearing was held, where Plaintiff appeared with counsel and testified before an ALJ, and Carol Mosley, a vocational expert (VE), also testified (Tr. 35-57, 106).

On September 15, 2011, the ALJ issued his decision, finding Plaintiff not to be disabled (Tr. 19-34). Plaintiff requested a review before the Appeals Council, and the Appeals Council denied Plaintiff's request for review (Tr. 1-4, 18). Therefore, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Section 405(g).

## II.     STATEMENT OF FACTS

Plaintiff was single, without children, and fifty-two years old at the time of the ALJ hearing (Tr. 40, 107). Plaintiff was a high school graduate, and attended two years of college, where he learned the skills to work as a barber (Tr. 40). Plaintiff acknowledged at the hearing that he has worked as a barber, kitchen helper, and landscaper (Tr. 40).

## III.    SUMMARY OF MEDICAL EVIDENCE

Plaintiff had a history of polysubstance abuse (Tr. 304). He was granted disability benefits for a period in the early 1990's before he went to prison, despite substance addiction (Tr. 304). Problems with drugs and alcohol continued thereafter; among other things, Plaintiff was dismissed from a treating physician's practice when toxicology reports came back positive for cocaine (Tr. 304).

As recently as March 2009, a few months before Plaintiff filed his current SSI application, emergency room records diagnosed polysubstance abuse, and informed Plaintiff that his examination indicated he had a "problem with substance abuse" (Tr. 256). Those records contradict Plaintiff's claim in 2011, that he had been "clean and sober since 2005" (Tr. 390).

Plaintiff has complained of back, neck, and knee pain that responded to treatment with medication and that was not always connected to physical findings. Plaintiff has also frequently declined other treatment recommendations.

In January 2008, clinic treatment notes state that Plaintiff had been seen several times for back pain, but was "generally non-compliant with intervention strategies," including rehabilitation and physical therapy (Tr. 180). MRI imaging documented involvement of the L5 neural foramen, but Plaintiff's symptoms were "not consistent with this single finding" (Tr. 181). Follow-up treatment records in June 2008 showed a normal range of motion in the back with only "mild" tenderness (Tr. 280).

Clinic treatment records from August 2008 also showed a few physical abnormalities. Despite complaints of low back pain and testicular pain, Plaintiff walked with a normal gait and exhibited normal motor strength in all extremities (Tr. 163). The treating physician recommended treatment with Lyrica, but Plaintiff became "very upset" when the doctor "did not want to just give him [the narcotic] Percocet" (Tr. 164). As the physician explained, he was "concerned that [Plaintiff] had such a negative reaction to alternative medications" (Tr. 164).

When Plaintiff returned to the clinic in November 2008, he explained that he had low back pain and wanted disability benefits (Tr. 154). The treating physician advised Plaintiff that he was "not disabled," based on his examination (Tr. 154).

3

Plaintiff then went to the emergency room at Lutheran Hospital in December 2008, complaining of pain in his left knee, which was preliminarily diagnosed as degenerative joint disease (Tr. 216). He was discharged with a prescription for the narcotic Vicodin (Tr. 218, 221).

When Plaintiff appeared again at the Lutheran Hospital emergency room in March 2009, he complained of back pain, but, nevertheless, he moved around the emergency room without difficulty and without an antalgic gait (Tr. 244). His hypertension was uncontrolled as a result of non-compliance with medications (Tr. 245). He was diagnosed with chronic back pain and polysubstance abuse (Tr. 246). In addition, treatment records showed symptoms of withdrawal (Tr. 246).

Plaintiff next treated with orthopedist William R. Bohl, M.D., who examined Plaintiff in March 2009, and noted tenderness of Plaintiff's back, some sensory deficits, and weakness of certain foot extensors and flexors (Tr. 331). Finding possible sciatica, Dr. Bohl recommended starting Plaintiff on a non-steroidal anti-inflammatory medication (Naprosyn), a pain reliever (Ultram), and physical therapy (Tr. 331). Dr. Bohl subsequently diagnosed cervical radiculopathy due to degenerative disc disease (Tr. 329), for which he prescribed a cervical collar (Tr. 327), and, later, Vicodin and Vistaril, for pain (Tr. 327).

A follow-up MRI in June 2009 confirmed cervical disc disease with some protrusion and narrowing with stenosis (Tr. 325). Dr. Bohl was "hesitant" to perform a one or two level fusion, and, instead, prescribed Vicodin and arranged for a second surgical opinion with Dr. Orr (Tr. 325). Dr. Orr recommended a laminectomy in July 2009 (Tr. 323, but Plaintiff never underwent that procedure. Later notes show that Dr. Orr refused to operate on Plaintiff (Tr. 321). Plaintiff agreed to the alternative procedure with Dr. Bohl, but was told he would have to quit smoking before Dr. Bohl could proceed (Tr. 321). However, Plaintiff did not quit smoking for almost two more years (Tr. 401). Plaintiff testified that he did not pursue the surgery for his cervical condition because he had "seen

4

other people with the same surgery, they didn't come out okay that I looked at" (Tr. 43).

Emergency room records from the summer of 2009 show that Plaintiff was obtaining narcotic medications from those sources. On May 24, 2009, Plaintiff appeared at the Lutheran Hospital emergency room "yelling" with neck and back pain, and was given Vicodin (Tr. 235). He was also asking for Demerol, another narcotic treatment, and became "angry" when the attending physician refused to provide it (Tr. 238). At that point, before he could be examined and treated, Plaintiff got up, ripped off the cervical collar a paramedic had applied, "jumped out of bed and hurried out of the ER swearing, gesturing, and yelling" about his pain medications (Tr. 239). He then "got on his bicycle and rode off [without] difficulty (Tr. 239).

Plaintiff biked out of the Lutheran Hospital emergency room at 3:00 p.m. (Tr. 239), and rode directly to the MetroHealth System emergency room, where he arrived at 3:36 p.m. (Tr. 296-97). He had no acute symptoms, but, in light of the holiday weekend, physicians supplied some Percocet tablets for his neck pain (Tr. 298).

Dr. Bohl later prescribed Vicodin on various occasions (e.g., Tr. 320), but refused to do so in November 2009, noting that since Plaintiff "did not want to see Dr. Orr for surgery," he would need to be referred to pain management (Tr. 320). After Dr. Orr refused to operate and Dr. Bohl tentatively scheduled the alternative surgery for Plaintiff (Tr. 321), Dr. Bohl resumed Plaintiff's Vicodin (Tr. 320). Nevertheless, in January 2010, after Dr. Bohl's office renewed Plaintiff's Vicodin prescription over the phone, the pharmacist called to state that Plaintiff's refill was not yet due (Tr. 320). In February 2010, Dr. Bohl referred Plaintiff to the pain clinic (Tr. 320), and refused to refill his pain medication thereafter (Tr. 320).

In August 2010, Plaintiff appeared at the Lutheran Hospital emergency room, stating that he had fallen from his sofa (Tr. 348). He complained of back and neck pain again (Tr. 348). A CT scan

5

of the cervical spine showed some degenerative changes, with ventral effacement of the thecal sac without definite central canal stenosis or disc protrusion, and no fracture (Tr. 352). Plaintiff was given a muscle relaxer (Flexeril) and Vicodin (Tr. 351).

In May 2011, Plaintiff appeared at the MetroHealth System Hospital, complaining of another exacerbation of neck and back pain (Tr. 357). Physical examination showed lumbar paraspinal tenderness with few other findings (Tr. 357). Range of motion in the neck was normal, as was range of motion in all extremities (Tr. 356-57). Straight leg raising testing was negative (Tr. 357). Plaintiff was given Percocet (Tr. 357).

Two weeks later, Plaintiff appeared at the MetroHealth emergency room again, complaining of low back pain and lower extremity pain (Tr. 372). Again, he demonstrated a full range of motion in all extremities, despite some lateral tenderness in his back (Tr. 373). Strength, reflexes, sensation, and gait were all normal (Tr. 373). Plaintiff was referred to pain management and rehabilitation, given analgesics, and restricted to "light duty" (Tr. 373).

Plaintiff then began treatment at the MetroHealth System Clinic with Ellen J. Gelles, M.D., telling her that he did not like taking medications and only used some Advil for his neck and back pain (Tr. 390). His hypertension was uncontrolled because he had not been using his medications (Tr. 392). Although Plaintiff proclaimed that he was "clean and sober since 2005," Dr. Gelles diagnosed polysubstance abuse and alcohol abuse (Tr. 390). In addition, Plaintiff testified shortly thereafter that his legs would swell when he walked, and that he could not do any lifting (Tr. 42). Dr. Gelles' examination showed that Plaintiff had lost fifteen pounds, which he attributed to getting "more exercise" (Tr. 391).

In July 2011, Plaintiff claimed to have been in a car accident and appeared at the emergency room a few days later, describing all-over pain (Tr. 401). He was diagnosed with neck and back strain

(Tr. 402). Plaintiff reported using no medications at that time other than Lisinopril for high blood pressure (Tr. 401). However, based on his post-accident reports of pain, he was given a muscle relaxer and pain medications (Tr. 402).

Plaintiff then appeared at the Clinic a few days later, seeking more Tylenol-3 (a narcotic for his alleged all-over pain (Tr. 418). He admitted that he had not filled the prescriptions he had been given for other, non-narcotic pain medications (Tr. 418).

In November 2008, when Plaintiff appeared for medical treatment "wanting disability," his treating doctor told him he was "not disabled," based on his examination (Tr. 154). Even in the wake of his alleged car accident in June 2011, when he went to the emergency room with purported all-over body pain, the treating nurse practitioner only limited him to "light duty" (Tr. 373). These treating source statements support the views of two expert state agency physicians, who also found Plaintiff capable of light work.

In February 2010, W. Jerry McCloud, M.D. reviewed the record and found that, although Plaintiff experienced medically-determinable impairments, they "could not reasonably be expected to produce the symptoms and limitations alleged by the claimant" (Tr. 317). He found that the record remained consistent with the prior ALJ's decision finding Plaintiff capable of light work (occasionally lifting twenty pounds and frequently lifting ten pounds; standing or walking six hours in a workday with normal breaks; and sitting six hours in a workday with normal breaks) (Tr. 313). In August 2010, when state agency physician Sarah Long, M.D. reviewed the record, she concurred (Tr.304). Based upon the entire record, the ALJ concluded that both state agency physician opinions were entitled to considerable weight, but then added an additional manipulative limitation to account for Plaintiff's testimony of additional cervical symptoms involving his neck and hands (Tr. 29).

### IV.     SUMMARY OF EXPERT TESTIMONY

At the hearing, the vocational expert (VE) classified Plaintiff's past work as a barber as skilled at the light level of exertion (Tr. 51). The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and past work experience with the physical residual function capacity for lifting and carrying ten pounds frequently and twenty pounds occasionally and pushing and pulling within those limits; standing and walking with normal breaks for six hours in an eight-hour workday; sitting with normal breaks for a total of six hours in an eight-hour workday; no climbing ladders, ropes, or scaffolds; no crouching or crawling; occasionally climbing ramps or stairs; occasionally bending, stooping, and kneeling; and frequently handling, feeling, and fingering (Tr. 51-52). The VE testified that such an individual would be able to perform Plaintiff's past work as a barber, and other jobs, such as an assembler or a packer, both at the light and unskilled level (Tr. 51-53). However, the VE testified that the additional limitations of no overhead reaching and only occasional reaching in other directions bilaterally would preclude the performance of competitive employment without special accommodations (Tr. 53).

### V.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (Sections 20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (Sections 20 C.F.R. 404.1520(c)and 416.920(c)(1992);

3. If an individual is not working and is suffering from a severe

>    impairment which meets the duration requirement, *see* Sections 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in Sections 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (Sections 20 C.F.R. 404.1520(d) and 416.920(d) (1992);
>
> 4.  If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (Sections 20 C.F.R. 404.1520(e) and 416.920(e) (1992);
>
> 5.  If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (Sections 20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering his age, education, past work experience and residual functional capacity. *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

## **VI.    STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Section 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision,

even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Social Security,* 127 F.3d 525., 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

## **VII.** **ANALYSIS**

Plaintiff raises two issues:

A. Whether the ALJ's residual functional capacity findings, as based on opinions of medical consultants and the ALJ's personal estimate of Plaintiff's functional limitations, is supported by substantial evidence.

B. Whether the ALJ's credibility finding that claimant's statements about his symptoms, based on treatment non-compliance, is supported by substantial evidence; good cause exists as the claimant lost his medical coverage to seek treatment.

First, Plaintiff claimed that his neck and back pain was totally disabling, but the ALJ found otherwise for reasons that appear in the record and are supported by governing law.

"Social Security regulations prescribe a two-step process for evaluating subjective complaints of pain." *McGuire v. Comm'r of Soc. Sec.*, 178 F.2d 1295, 1999 WL 196508, at *6 (6th Cir. Mach 25, 1999) (unpublished). "The plaintiff must establish an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain from the condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give a rise to the alleged pain." *Id.* (citing 20 C.F.R. Section 404.1529(b); *Jones v. Sec'y of Health*

10

*& Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)). The ALJ correctly followed this test in his decision (Tr. 26). The ALJ also recognized that his task did not end there; rather, as the Sixth Circuit has explained, "[i]f a plaintiff establishes such an impairment the ALJ must then evaluate the intensity and persistence of the plaintiff's symptoms." *McGuire*, 1999 WL 196508, at *6 (citing 20 C.F.R. Section 404.1529(c). *Allen v. Comm'r of Soc. Sec.*, 561 F3d 646, 652 (6th Cir. 2009); 20 C.F.R. Section 404.1529(c).

The ALJ, in his analysis, agreed that Plaintiff experienced musculoskeletal impairments (Tr. 24), but found them to be compatible with a range of light work, based upon substantial evidence. *See, e.g., Bailey v. Comm'r of Soc. Sec.*, 623 F. Supp. 2d 889, 902 (W.D. Mich. June 3, 2009).

The ALJ relied on the fact that physical examinations often showed few positive findings (e.g., physical examinations in May and June 2011 were unremarkable except for tenderness) (Tr. 27-28, 355-56, 373). The ALJ also relied on the fact that "[n]o treating physician has expressed any restrictions" on Plaintiff's activity (Tr. 28). On the contrary, the ALJ noted Plaintiff had been "encouraged to engage in active exercise" (Tr. 28, 374). Treatment records showed that Plaintiff had become more active with exercise and that he even attributed his recent fifteen-pound weight loss to increased exercise activity (Tr. 28, 391).

The ALJ considered the fact that, despite allegations of disabling pain and limitations, Plaintiff did not follow through with surgery or other recommended treatments, including referrals to pain management specialists and rehabilitation clinics (Tr. 28, 180, 320). Dr. Bohl refused to prescribe further narcotic pain medications, in light of Plaintiff's refusal to pursue treatments that were recommended for him (Tr. 28, 320). The lack of treatments pursued by Plaintiff, other than his repeated efforts to obtain narcotic medications, tended to undermine his claims of debilitating pain (Tr. 28, 29). The ALJ also considered the fact that no treating source had placed restrictions on Plaintiff,

other than a restriction to "light duty" after his purported car accident, which was consistent with the ALJ's finding of light work (Tr. 28, 373). The ALJ also based his decision on the fact that Plaintiff's daily activities showed good physical function (Tr. 28, 29). Among other things, on May 24, 2009, even while yelling about his alleged pain and demanding narcotic pain medication, Plaintiff was observed riding his bicycle out of the emergency room "without difficulty" (Tr. 28, 239). He then, apparently, rode directly to a second emergency room, where he appeared thirty-five minutes later, also seeking narcotic pain medication (Tr. 298). The ALJ finally considered the fact that two expert state agency physicians, who reviewed the record, found Plaintiff's impairments compatible with light work (Tr. 29, 304, 312-17).

In summary, based upon substantial evidence, the ALJ correctly assessed Plaintiff's subjective claims of pain in this case. The ALJ acknowledged that Plaintiff had low back, neck, and knee pain. However, based on substantial evidence in the record, the ALJ concluded that the limiting effects of those impairments were not as severe as Plaintiff alleged, and did not preclude all work. Since the ALJ's determination was supported by substantial evidence, his decision is correct, that Plaintiff was capable of sedentary work, despite his back disorder, also noting evidence that included Plaintiff's activities of daily living, his course of only conservative treatment, and lack of an assistive device.

Plaintiff also challenges the ALJ's finding that he could perform light work, by asserting that the ALJ should not have made that finding from the record without further medical opinion evidence.

Under current regulations, a claimant's residual functional capacity (RFC) "is not a medical assessment." As this Court has explained, it is "an administrative finding, not a medical opinion." *Willingham-Johnson v. Comm'r of Soc. Sec.*, 2013 WL 2387703, at *7 (N.D. Ohio May 30, 2013) (Limbert, U.S.M..J.). *See,* Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *2. Accordingly, although the ALJ will "consider opinions from medical sources on issues such as . . . . your residual

functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner." *Langley v. Comm'r of Social Security*, 777 F. Supp. 2d at 1252 (quoting 20 C.F.R. Section 404.1527(e)(2), recently renumbered as Section 404.1527(d)(2)).

Nevertheless, Plaintiff claims that the ALJ should not have fashioned his RFC without a complete medical record, and needed a medical opinion from a treating or consulting source, citing *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008) (Pl. Br. at 9). However, Plaintiff's position is not supported by the regulations or the law. 20 C.F.R. Sections 416.927(d), 416.946(c) Social Security Ruling (SSR) 96-5p; 20 C.F.R. Section 416.912(e); *Poe v. Comm'r of Soc. Sec.*, 2009 WL 2514058, at *7 (6th Cir. Aug. 18, 2009); *Willingham-Johnson*, 2013 WL 2387703, at *7 (the "RFC assessment is an administrative finding, not a medical opinion"); *Henderson v. Comm'r of Soc. Sec.*, 2010 WL 750222, at *2 (N.D. Ohio March 2, 2010). The "Sixth Circuit has frequently upheld ALJ decisions where the ALJ rejected medical opinion testimony and determined RFC based on objective medical evidence and non-medical evidence.

Moreover, Plaintiff's argument is incorrect, because the ALJ **did** have opinion evidence that supported his RFC finding of the expert opinions of two state agency reviewing physicians (Tr. 29, 304, 312-17). *See*, 20 C.F.R. Section 416.927(e); *Chandler v. Astrue*, 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. Section 416.927(f), recently renumbered as 416.927(e), and SSR 96-6p).

Furthermore, Plaintiff argues that a lapse of time between the state agency physician opinions and the ALJ hearing made the ALJ's decision to credit that opinion evidence in error is not supported by the regulations. *Chandler*, 667 F.3d at 361. The ALJ is to assess whether the subsequent medical evidence impacts the persuasiveness of an opinion. *Id.* (citing SSR 96-6p).

Plaintiff is also wrong when he contends that the ALJ had an affirmative obligation to procure opinion evidence from Dr. Bohl, to arrange a consultative examination, or utilize a medical expert at the hearing. "An ALJ has discretion" under the regulations to "determine whether further evidence,

13

such as additional testing, is necessary." *Hayes v. Comm'r of Soc. Sec.*, 357 F.App'x 672, 675 (6th Cir. 2009) (unpublished) (citing 20 C.F.R. Section 416.917). *Landsaw v. Sec'y of Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). *Accord, Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 189 (6th Cir. 2009).

Pursuant to the regulations, an ALJ's decision about whether to re-contact a treating source is also discretionary as well. *Owen v. Astrue*, 2012 WL 4867434, at *4 (E.D. Ky. October 12, 2012) (quoting 20 C.F.R. Section 404.1520b©. The ALJ did not need to re-contact Dr. Bohl, or any other treating source, since Plaintiff had already presented Dr. Bohl's treatment records (Tr. 54).

Finally, Plaintiff's attorney expressly acknowledged at the hearing that other than a single emergency room note, he had submitted all the records, so that the record was "complete" (Tr. 38).

In conclusion, the ALJ had the authority to fashion Plaintiff's RFC, which he did, based upon a complete record and opinion evidence from expert state agency physicians.

Plaintiff's remaining argument is that the ALJ incorrectly assessed his credibility by citing to his non-compliance with medical advice. However, the ALJ was permitted to consider such evidence as part of the credibility evaluation.

Non-compliance is an appropriate ground for adversely assessing a claimant's credibility. *See, e.g., Vega v. Astrue*, 2009 WL 5031362 *2 (3d Cir. 2009) (unpublished); *see,* SSR 96-7p). *Angelo v. Comm'r of Soc. Sec.*, 2013 WL 765646, at *7 (S.D. Ohio Feb. 28, 2013), *adopted by* 2013 WL 1344841 (S.D. Ohio Apr. 2, 2013) (citing SSR 96-7 P, 1996 WL 37186, at *7). Plaintiff's non-compliance with treatment recommendations was not limited to the surgery recommendations; as the ALJ explained, Plaintiff also failed to pursue recommendations to attend a pain clinic and a physical and rehabilitation clinic, despite several referrals (Tr. 28, 180, 320).

Nevertheless, the ALJ noted Plaintiff's non-compliance as only one factor among many that undermined the credibility of Plaintiff's statements that his conditions were so debilitating that he

14

could not work at all. Relying upon the entire record, the ALJ correctly concluded that Plaintiff could perform a limited range of light work. He also considered the following facts: (1) Plaintiff's activities of daily living, (2) the objective medical evidence, (3) the treatment records, (4) the state agency physician opinions, and (5) the lack of treatment (Tr. 29). Considering all of these sources of evidence, the ALJ correctly concluded that Plaintiff's "subjective complaints and alleged limitations [were] not fully persuasive" (Tr. 29).

Finally, the ALJ correctly followed the Social Security Act and governing regulations when the ALJ considered all the evidence in the case record. *See, Keaton v. Comm'r of Soc. Sec.*, 2011 WL 5374357, at *7 (N.D. Ohio Oct. 14, 2011), *adopted by* 2011 WL 5361067 (N.D. Ohio Oct. 31, 2011) (citing 42 U.S.C. Section 423(d)(5)(B)); 20 C.F.R. Section 416.912(d).

## **VIII. CONCLUSION**

Based upon a review of the record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional capacity (RFC) to perform a range of light work, despite his impairments, and, therefore, was not disabled. Hence, he is not entitled to Supplemental Security Income.

Dated: April 18, 2014                    */s/George J. Limbert*
                                         GEORGE J. LIMBERT
                                         UNITED STATES MAGISTRATE JUDGE